# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AYDIL V. GONZALEZ,                :
                                  :
      Plaintiff,              :        No. 3:19-cv-01482
                                  :
      v.                      :        (SAPORITO, M.J.)
                                  :
ANDREW SAUL,[1]                   :
Commissioner of                   :
Social Security,                  :
                                  :
      Defendant.              :

## <u>MEMORANDUM</u>

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Aydil V. Gonzalez ("Gonzalez") claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Rule 73 of the Federal Rules of Civil Procedure. (Doc. ___, Doc. ___, Doc. ____). For the reasons stated herein, we **AFFIRM** the decision of the Commissioner.

## I.  *Background and Procedural History*

Gonzalez is an adult individual born June 4, 1981, who was 34 years old at the time of her alleged onset date of disability—January 13, 2016. (Tr. 1150, 1280). Gonzalez's age at the onset date makes her a "younger person" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c). Gonzalez is a high school graduate and completed her associate degree in 2006 in Puerto Rico. (Tr. 1105, 1274). Additionally, Gonzalez has past relevant work experience, working as a telemedic nurse and a registered nurse in Puerto Rico. (Tr. 1107-08). On September 26, 2016, Gonzalez protectively filed for disability benefits pursuant to Title II of the Social Security Act. (Tr. 44). In her application, Gonzalez alleged that she became disabled beginning January 13, 2006, as a result of severe persistent asthma, bronchitis, high blood pressure, diabetes, sleep apnea, depression, anxiety, and severe morbid obesity. (Tr. 1273). Gonzalez's claim was initially denied on March 20, 2017. (Tr. 44). Thereafter, Gonzalez filed a timely request for an administrative hearing

on August 1, 2017, and it was granted. (*Id.*). Gonzalez, represented by counsel, appeared and testified before ALJ, Lawrence J. Neary, on August 28, 2018, in Harrisburg, Pennsylvania. (Tr. 1098). In addition, an impartial vocational expert ("VE"), Sheryl Bustin, also appeared and testified during the administrative hearing. (Tr. 44, 1098). At the time of the hearing, Gonzalez was 37 years old and resided with her family in Lebanon, Pennsylvania. (Doc. 11, at 7).

In a written decision dated November 8, 2018, the ALJ denied Gonzalez's application for benefits. (Tr. 44). Gonzalez sought review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied for review on August 14, 2019. (Tr. 1). Gonzalez subsequently filed an appeal to this court on August 26, 2019, arguing that the ALJ's decision was not supported by substantial evidence. (Doc. 1). On November 1, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's decision was correct and in accordance with the law and regulations. (Doc. 4, at 4). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 11, Doc. 12).

On this score, Gonzalez's treatment history discloses that Gonzalez

has a history of physical and mental health conditions, including asthma, bronchitis, high blood pressure, diabetes, sleep apnea, obesity, depression, and anxiety. (Tr. 49). The medical record reflects that Gonzalez underwent imaging of her lumbar and cervical spines. (*Id*.). The results revealed limited abnormal findings, including degenerative disc disease and osteoarthritis at multiple levels, but overall the degenerative changes were "mild" and "slight." (Tr. 1403-36, 1437-85, 1523-25). The medical record also reveals that Gonzalez suffers from radiculopathy, as Gonzalez frequently complained of radiating pain in her legs and upon examination, exhibited left-sided paraspinal tenderness with positive straight leg raise testing indicative of pain in her legs. (Tr. 1765-1899). Gonzalez further describes numbness and weakness, particularly in her left leg, and reported in April 2018 that she had begun using a cane to take the pressure off her back. (Tr. 1729-64). Gonzalez, however, indicated some positive response to medication, and reported that epidural steroid injections provided 60 percent pain relief in her back and resolution of her leg pain. (Tr. 1729-64, 1765-1899).

In February 2017, in Puerto Rico, Gonzalez was examined by Dr. Fernando Torres-Santiago ("Dr. Torres-Santiago"). (Tr. -1526-30). Upon

examination, Gonzalez complained of backaches that derived from the wear and tear of her working years. (Tr. 1526). Gonzalez stated that she experienced poor relief with the uses of common pain killer pills and muscle relaxants, and that her medical conditions affected her activities of daily living. (*Id.*). Dr. Torres-Santiago noted, however, that Gonzalez did not use a walking aid; that her gait and station was normal; and that she showed no signs of limb or joint pain. (Tr. 1528). Additionally, Dr. Torres-Santiago noted minimal abnormal findings. (*Id.*). For example, Gonzalez exhibited moderate trapezius muscle spasms, but adequate range of motion in her cervical spine, and that Gonzalez demonstrated discomfort with flexion-extension of her lumbar spine at 60 degrees, with evidence of paravertebral muscle spasms. (Tr. 1529).

In April 2018, Gonzalez visited WellSpan Health. (Tr. 1749). During the examination, Gonzalez complained of severe pain, rated as 10/10, located at the lumbosacral spine. (*Id.*). Gonzalez described her pain as aching, sharp, with pressure that occurs constantly. (*Id.*). Gonzalez indicated that the symptoms were exacerbated by standing, walking, and movement of limb. (*Id.*). Other associated symptoms included weakness, sensitivity to touch, and sleep disturbance. (*Id.*). Upon examination,

however, Gonzalez's lumbar paraspinals and facet joints were tender to palpation on the left and she had limited range of motion in the lumbar spine particularly with flexion, and an increase in left-sided low back pain with straight leg raise testing. (Tr. 50).

As for Gonzalez's asthma, the medical record reflects that Gonzalez suffers from recurrent symptoms that can be expected to limit her extreme tolerance. For example, Gonzalez complained of exacerbation of her symptoms on various occasions, reporting cough, shortness of breath, and chest tenderness. (Tr. 1437-85, 1556-66, 1585-98). However, the frequency of asthma-related hospitalization is not corroborated in the record. Further, objective medical testing of record demonstrates minimal abnormal findings. For example, in February 2017, spirometry testing showed a normal forced vital capacity (FVC) and forced expiratory volume (FEV). (Tr. 1548-53). Additionally, during Gonzalez's February 2017 consultative examination, Gonzalez exhibited no rales or wheezing, and no laborious breathing. (Tr. 1529). Moreover, while Gonzalez exhibited wheezing in an April 2017 examination, Gonzalez's respiratory function was normal upon examination in November 2017. (Tr. 50). Gonzalez further reported in a May 2018 examination that she was only

experiencing mild breathing issues, with off and on wheezing and chest tightness. (Tr. 1926-27).

Based upon Gonzalez's physical impairments, the State agency medical consultants for the initial and reconsideration determinations opined that Gonzalez could perform work at the light exertional level involving frequent postural maneuvers and no concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants. (Tr. 1140-42; 1157-59).

As for Gonzalez's mental impairments, the medical record reflects that Gonzalez's mental health treatment has been fairly routine, with few significant abnormalities during mental status examinations, and good reported response to medication. (Tr. 1567, 1691-1728, 100-07). For example, Gonzalez has occasionally demonstrated diminished concentration, anxiety, or irritable moods, but has reported functioning well at home with no side effects from her medication. (Tr. 1567, 1691-1728, 100-07). In February 2017, Gonzalez was examined by Dr. Marisol Santiago ("Dr. Santiago"). (Tr. 1535-45). Upon examination, Dr. Santiago noted that Gonzalez was cooperative, appropriately dressed, but appeared anxious with some anger, and was crying during the interview.

(Tr. 1541). Gonzalez revealed that she was upset that her medical conditions prevent her from working and helping her husband with the household expenses. (Tr. 1544). Despite her depressed and anxious appearance, Dr. Santiago noted limited abnormal findings. (Tr. 1540-43). For example, Gonzalez's speech was normal, she repeated a group of objects out of order, and could recall only three out of five objects after a five-minute delay. (Tr. 1541-43). Additionally, Dr. Santiago noted that while Gonzalez presented with signs and symptoms of depression, and complained of physical symptoms from obesity, chronic asthma, and vocal dysfunction, Gonzalez exhibited an adequate intellectual capacity to solve problems; she was able to interact socially with others; and she was capable of managing money. (Tr. 1544).

Based upon Gonzalez's mental health impairments, the State agency consultants for the initial and reconsideration determinations, opined that Gonzalez had no severe mental impairments, with no more than mild limitations in any of the "paragraph B" functional areas. (Tr. 1130-44, 1146-60).

## II.   *Legal Standards*

When reviewing the denial of disability benefits, the Court's review

is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record

as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *Id.*

§ 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a); *Id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *Id.* § 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *Id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *Id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *Id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Id.* § 416.912(f); *Mason*, 994 F.2d at 1064.

## III.   Discussion

In his November 2018, decision denying Gonzalez's claim for benefits, the ALJ evaluated Gonzalez's application for benefits at each

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

step of the sequential evaluation process. In that decision, the ALJ first concluded that Gonzalez had met the insured status requirements of the Social Security Act through December 31, 2021. (Tr. 46). At step one, the ALJ concluded that Gonzalez had not engaged in substantial gainful activity since January 13, 2016, the alleged onset date. (*Id.*). At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: obesity, asthma, diabetes, osteoarthritis, degenerative disc disease with radiculopathy, cervicalgia, myofascial pain syndrome, moderate recurrent major depression, and unspecified anxiety disorder. (*Id.*).

At step three, the ALJ found that Gonzalez did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 47-48). Between steps three and four, the ALJ fashioned an RFC considering Gonzalez's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that [Gonzalez] has the [RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with the following nonexertional limitations: [Gonzalez] can occasionally perform postural activities; [Gonzalez] can have no exposure to extreme heat, extreme cold, wetness, humidity,

fumes, odors, dusts, gases, and hazards such as machinery and unprotected heights; [Gonzalez] can perform simple, routine tasks involving no interaction with the public and only occasional interaction with supervisors and coworkers.

(Tr. 48).

At step four, the ALJ found that Gonzalez had past relevant work experience working as a telemetric nurse and a registered nurse. (Tr. 51). At step five, the ALJ determined that based on Gonzalez's age, education, work experience, and RFC that there were a significant number of jobs in the national economy that she could perform, including working as a carding machine operator, final assembler, and dowel inspector. (Tr. 52).

Gonzalez contends that the decision of the ALJ is not supported by substantial evidence of record and raises four issues on appeal attacking various aspects of the ALJ's decision. We shall address each argument seriatim.

### A. Substantial Evidence Supports the ALJ's RFC Assessment

Gonzalez's first claim of error, challenges the ALJ's RFC assessment. (Doc. 11, at 13-16). Specifically, Gonzalez argues that the ALJ limited her to an RFC of sedentary work, which requires an individual to stand or walk for no more than two hours in an eight-hour

workday. (Doc. 11, at 13).[6] Gonzalez contends that the RFC does not include any additional functional limitations to reflect her actual limitations, which derive from her physical impairments. (*Id*.). Gonzalez asserts that her physical impairments do not permit her to stand or walk for two hours in an eight-hour workday as required under the sedentary RFC. (*Id*.). Thus, Gonzalez argues that the sedentary RFC is not supported by the record. (*Id*.). Gonzalez further contends that there were no competent medical opinions upon which the ALJ properly relied in formulating the RFC. (*Id*.).

Lastly, Gonzalez argues that the ALJ erroneously denied her request to leave the record open. Gonzalez argues:

> [At] the time of the hearing [Gonzalez] requested that the record be left open following the hearing to submit records

---

[6] The regulations define sedentary work as involving lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required "occasionally" and other sedentary criteria are met. 20 C.F.R. 404.1567(a); *see also* SSR 83-10p, 1983 WL 31251 at *5. By definition, "occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about two hours of an eight-hour workday, and sitting should generally total approximately six hours of an eight-hour work-day. SSR 83-10p, 1983 WL 31251 at *5.

regarding two upcoming surgeries, and despite the fact that these would be occurring shortly after the hearing, the ALJ denied [Gonzalez's request] to leave the record open, stating that the ALJ would expect that [Gonzalez] would recover from these surgeries in less than one year. (Admin Tr. 1101). This assumption by the ALJ as to the relevance of medical evidence not yet of record, as well as his assumption that [Gonzalez] will recover in a certain period of time, is an abuse of discretion by the ALJ, who should have left the record open to accept evidence. As the nature of the surgeries was to address conditions noted to be severe by the ALJ, the records clearly may have been relevant, particularly if there were complications following the surgeries.

(Doc. 11, at 15).

In response, the Commissioner argues that the ALJ correctly considered all of Gonzalez's impairments and reasonably assessed an RFC that was substantially supported by the evidence of record. (Doc. 12, at 12). The Commissioner further contends that the ALJ did not abuse his discretion by refusing to leave the record open until after her surgeries. (Doc. 12, at 11). The Commissioner avers that Gonzalez did not submit her evidence timely and the ALJ reasonably concluded, based on her counsel's proffer, that it was not likely to alter his decision. Therefore, the Commissioner contends that the ALJ did not abuse his discretion.

The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC

determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d at 356, 361 (3d Cir. 2011). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359(3d Cir. 1999)). It reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In assessing the RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted). The Court's "review of the ALJ's assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); *see also Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

Here, we find that substantial evidence supports the ALJ's RFC assessment. In crafting the RFC, the ALJ considered all of Gonzalez's physical and mental health impairments, including Gonzalez's obesity, asthma, diabetes, osteoarthritis, degenerative disc disease with radiculopathy, cervicalgia, and myofascial pain syndrome. The ALJ explained, however, that despite evidence of severe physical and mental health impairments, the objective medical evidence revealed limited abnormal findings. For example, while imaging of Gonzalez's lumbar and cervical spines revealed degenerative disc disease and osteoarthritis at multiple levels, the overall degenerative changes were "mild" and "slight." (Tr. 1403-36, 1437-85, 1523-25). Further, the ALJ explained that while the medical record revealed that Gonzalez suffered from radiculopathy, as Gonzalez described numbness and weakness, particularly in her left leg, the medical record also revealed that Gonzalez experienced some positive response to medication, and that epidural steroid injections provided 60 percent pain relief in Gonzalez's back and resolution of her leg pain. (Tr. 1729-64, 1765-1899). Moreover, upon physical examinations it was noted that Gonzalez exhibited moderate trapezius muscle spasms, but adequate range of motion in her cervical

spine; that she did not use a walking aid; that her gait and station was normal; and that she showed no signs of limb or joint pain. (Tr. 1528).

As for her asthma, the medical record demonstrated that Gonzalez complained of exacerbation of her symptoms on various occasions, reporting cough, shortness of breath, and chest tenderness. (Tr. 1437-85, 1556-66, 1585-98). The ALJ explained, however, that the frequency of Gonzalez's asthma-related hospitalizations were not corroborated in the record and that the medical record demonstrated minimal abnormal findings. For example, in February 2017, spirometry testing showed a normal forced vital capacity (FVC) and forced expiratory volume (FEV); during her February 2017 consultative exam, Gonzalez exhibited no rales or wheezing, and no laborious breathing; and during a May 2018 examination, Gonzalez only reported experiencing mild breathing issues, with off and on wheezing and chest tightness. (Tr. 50, 1437-85, 1529, 1548-53, 1556-66, 1585-98, 1926-27).

With regard to Gonzalez's mental health impairments, the ALJ explained that the medical record reflected that Gonzalez's mental health treatment was fairly routine, with few significant abnormalities during mental status examinations, and that Gonzalez had reported good

response to medication. (Tr. 1567, 1691-1728, 100-07). The ALJ further explained that while the medical record demonstrated that Gonzalez presented signs and symptoms of depression, and complained of physical symptoms from obesity, chronic asthma, and vocal dysfunction, Gonzalez exhibited an adequate intellectual capacity to solve problems; she was able to interact socially with others; and she was capable of managing money. (Tr. 1544).

The ALJ also considered the opinion evidence of record in formulating the RFC. (*See Admin. Tr.* 50-51). With regard to Gonzalez's physical impairments, the ALJ considered the opinions of State agency medical consultants, Dr. Pedro Nieves ("Dr. Nieves") and Dr. Rafael Queipo ("Dr. Queipo"). (Tr. 50). Both physicians opined that Gonzalez was capable of performing work at the light exertional level, involving frequent postural maneuvers and no concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants. (Tr. 1140-42; 1157-59). The ALJ, however, afforded the opinions of Drs. Nieves and Queipo "partial" weight, concluding that while their opinions reflected appropriate areas of limitation, they did not reflect the full extent of Gonzalez's limitations. (Tr. 50).

With regard to Gonzalez's mental health impairments, the ALJ considered the opinions of State agency psychological consultants, Dr. Jesus Soto ("Dr. Soto") and Dr. Zulma Nieves ("Dr. Z. Nieves") and accorded their opinions "little" weight. (Tr. 50-51). Dr. Soto and Dr. Z. Nieves both opined that Gonzalez had no severe mental impairments, with no more than mild limitation in any of the "paragraph B" functional areas. (Tr. 1139-40, 1155-56). The ALJ assigned "little" weight to the opinions of Drs. Soto and Z. Nieves, concluding that their opinions were not consistent with the evidence of record, which was sufficient in establishing more than minimal difficulties related to Gonzalez's mental impairments. (Tr. 50-51).

Lastly, the ALJ considered other evidence in crafting the RFC, including Gonzalez's own statements. For example, Gonzalez testified that she could not sit longer than 30 minutes due to her pain, that she uses a rescue inhaler approximately four times per day, that she could not continue working in Puerto Rico as she was missing a lot of work due to her health issues, and that she has required the use of a cane since at least November 2017. (Tr. 1105, 1109, 1112-1118). However, despite alleging disabling symptoms stemming from her physical and mental

impairments, Gonzalez described her daily activities in terms that were not wholly disabling. For example, Gonzalez reported that she could care for most of her personal needs; she washes clothes with the help of her family; she prepares meals for her husband and children; she drives; she goes grocery shopping and goes to church; she is capable of paying bills, and handling a checking account; she watches television and listens to music; and she spends time with her family.  (Tr. 1305-12, 1539-44).

Gonzalez argues that the ALJ erroneously limited her to an RFC of sedentary work because she is unable to stand or walk for two hours in an eight-hour workday as required under the sedentary work RFC. (Doc. 11, at 13). Gonzalez contends that the sedentary RFC fails to include any additional functional limitations that account for her physical impairments. (*Id*.). Gonzalez further contends that there are no competent medical opinions upon which the ALJ properly relied in formulating the RFC. (*Id*.). The Court is not persuaded by Gonzalez's arguments as to this issue. At the outset, the ALJ carefully considered the evidence of record. The ALJ, however, was confronted by a record marked with contrasting evidence, and inconsistencies regarding Gonzalez's abilities and limitations. Reconciling the discordant and

conflicting threads of evidence, the ALJ confined Gonzalez to an RFC of sedentary work with additional limitations to address her impairments. (Tr. 48). It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence supported the ALJ's decision as to this matter.

Additionally, while Gonzalez argues that the RFC does not include any additional functional limitations to adequately account for her physical impairments, Gonzalez fails to indicate the functional limitations that should have been included in the RFC or what evidence the ALJ failed to consider. Moreover, Gonzalez contends that there were no competent medical opinions upon which the ALJ properly relied in crafting the RFC. However, we find that Gonzalez's contentions on this score are without merit. As mentioned above, the ALJ properly considered the opinion evidence of record and assigned "partial" weight to the opinions of Drs. Nieves and Queipo and assigned "little" weight to the opinions of Drs. Soto and Z. Nieves. (Tr. 50-51). In doing so, the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. Thus, the Court finds no basis for disturbing the ALJ's determination on this matter.

Lastly, Gonzalez argues that the ALJ erroneously denied her request to leave the record open to submit records concerning her two upcoming surgeries. We disagree. As correctly asserted by the Commissioner, Gonzalez did not submit her evidence timely. Thus, the ALJ reasonably concluded, based on her counsel's proffer, that leaving the record open for submission of additional evidence pertaining to her upcoming surgeries, would not likely alter his decision. *See* 20 C.F.R. § 404.935.

Further, it is longstanding precedent in this jurisdiction "that evidence not presented to the [ALJ] should not be reviewed by the district court nor be the basis of remand to the Commissioner, unless the evidence is 'new' and 'material,' and there is 'good cause' [for the claimant] not having produced the evidence earlier." *Matthews v. Apfel*, 239 F.3d 589, 590 (3d Cir. 2001). Here, as correctly stated by the Commissioner, Gonzalez has offered no specific argument as to how her post-hearing submission is 'new,' 'material,' relates to the relevant period, and creates a reasonable probability that it would change the outcome of her case. (Doc 11, at 11-16). Thus, this evidence cannot be used to challenge the ALJ's decision on substantial evidence grounds.

To reiterate, this Court is not now tasked with revisiting these factual issues, and we may not substitute our judgment of that of the ALJ. Instead, we are limited to determining whether the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. Thus, finding that the ALJ provided adequate articulation for these determinations which were grounded in substantial evidence, the Court finds no basis for disturbing the ALJ's determination on this issue.

### B. Substantial Evidence Supports the ALJ's Step Two Evaluation and Any Alleged Error is Harmless on These Facts

Gonzalez's next claim of error, challenges the ALJ's step two evaluation. (Doc. 11, at 19). Specifically, Gonzalez argues that the medical record confirms that she suffers from a number of conditions not considered to be severe by the ALJ, including her sleep apnea, erosive gastritis, diverticulitis, neuropathy in her hands and feet, lysis of adhesions, and ovarian cysts. (Doc. 11, at 17). Gonzalez alleges that these conditions cause more than a 'slight limitation' with regard to her activities of daily living. Gonzalez contends:

> [The] fact that the ALJ considered these disorders to be non-severe in nature, and the fact that he offered little discussion regarding these disorders, is further confirmation that the ALJ did not consider these disorders, or limitations related

thereto, in setting forth [Gonzalez's] RFC . . . these conditions should have been considered to be severe, as they have more than a minimal effect upon [Gonzalez], and should have been factored into her RFC. Even if the ALJ had not considered these conditions to be severe, they should have been considered and analyzed by the ALJ, as even limitations from non-severe impairments need to be considered in setting forth a claimant's RFC.

(Doc. 11, at 18-19).

In response, the Commissioner argues that the ALJ correctly considered all of Gonzalez's impairments and reasonably assessed an RFC that was substantially supported by the evidence of record. (Doc. 12, at 12). The Commissioner further contends that while the record contains evidence that these impairments existed during the relevant time period, there is no evidence of resulting significant work-related limitations as averred by Gonzalez. (Doc. 12, at 14).

At step-two of the sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1520(c). An impairment is severe if it is "something beyond a slight abnormality or a combination of slight abnormalities which would have

no more than a minimal effect on an individual's ability to work." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). The Court of Appeals is clear that the step-two inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). The burden is on the claimant to show that an impairment qualifies as severe. *Bowen*, 482 U.S. at 146.

Applying the above standard, we find that the ALJ's step two evaluation is supported by substantial evidence. At step two, the ALJ considered all of Gonzalez's alleged impairments, including her severe persistent asthma, bronchitis, high blood pressure, diabetes, sleep apnea, depression, anxiety, and severe morbid obesity. The ALJ concluded, however, that through the date last insured, Gonzalez had the following severe impairments: obesity, asthma, diabetes, osteoarthritis, degenerative disc disease with radiculopathy, cervicalgia, myofascial pain syndrome, moderate recurrent major depression, and unspecified anxiety disorder. (Tr. 46). The ALJ then concluded that Gonzalez had the following nonsevere impairments: sleep apnea, erosive gastritis, and gastroesophageal reflux disorder (GERD). (*Id*.). In forming this

determination, the ALJ considered Gonzalez's treatment records and testimony concerning her activities of daily living, as mentioned above. (*See Admin Tr.* 49-51). The ALJ, however, found that these impairments did not significantly limit Gonzalez's physical or mental abilities to perform basic work activities. (*Id.*). The ALJ explained that while all of these conditions were nonsevere, he considered all of Gonzalez's severe and nonsevere impairments in crafting the RFC. (*Id.*). The ALJ further explained that in crafting the RFC, he included the appropriate exertional and nonexertional limitations to adequately address all of Gonzalez's severe and nonsevere impairments. (Tr. 46-47).

Gonzalez argues that the ALJ should have found her diverticulitis, neuropathy in her hands and feet, lysis of adhesions, and ovarian cysts to be severe impairments. However, Gonzalez never alleged that these impairments limited her ability to work. Moreover, the ALJ did not deny Gonzalez's claim at step two of the sequential evaluation process. Therefore, it is not necessary for the ALJ to have specifically found any additional alleged impairments to be severe because the ALJ considered the effects of these impairments at steps three through five of the sequential evaluation process. *See Naomi Rodriguez v. Berryhill*,

No.1:18-CV-684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019)(citing cases); *see also Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx 140, 145 (3d Cir. 2007). Thus, any possible error at step two of the sequential evaluation process is harmless.

Hence, contrary to Gonzalez's contentions, the ALJ considered her impairments at step two of the sequential evaluation process, and continued to consider them throughout this process in crafting the sedentary work RFC. It appears that Gonzalez is requesting that this Court re-weigh the evidence. This we may not do. *See*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992))). Because we cannot re-weigh the evidence, we find the ALJ has not erred at step two of the sequential evaluation process.

### C. Substantial Evidence Supports the ALJ's Consideration of the Opinion Evidence of Record

Next, Gonzalez argues that the ALJ erred in formulating the RFC assessment by assigning to much weight to the opinions of Drs. Nieves and Queipo, State agency medical consultants, and Drs. Soto and Z.

Nieves, State agency psychological consultants. (Doc. 11, at 19).

Specifically, Gonzalez contends:

> The exertional limitations set forth by the ALJ in many ways mirror those provided in the Disability Determination Transmittal, regarding [Gonzalez's] exertional limitations at the time of the initial claim. It is important to note that the ALJ makes no reference to any medical opinions of record, from a CE, ME, or treating source, in setting forth his discussion in his decision regarding his rendering of [Gonzalez's] RFC. (See ALJ decision, generally). Regarding the lack of any opinion of record which the ALJ relied upon regarding [Gonzalez's] exertional limitations, it is well established that "rarely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant. (*Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). ("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by the record."). The only opinions of record in this matter, which were relied upon by the ALJ, are from State agency physicians, who never examined [Gonzalez].

(Doc. 11, at 22).

In response, the Commissioner argues that the ALJ did not rely on the State agency reviewing medical consultants to assess Gonzalez's RFC. The Commissioner avers that the ALJ accorded "partial" weight to the opinions of Drs. Nieves and Queipo, and accorded "little" weight to the opinions of Drs. Soto and Z. Nieves. (Doc. 12, at 15). Thus, the ALJ did not rely exclusively on these opinions to assess Gonzalez's RFC. (*Id.*).

The Commissioner further contends that the ALJ is entitled to rely on the opinions provided by State agency reviewing medical consultants. The law is clear, "[s]tate agency physicians and psychologists are considered to be 'highly qualified physicians and psychologists who are also experts in Social Security disability evaluations." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 96 (3d Cir. 2007).

Further, the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler,* 667 F.3d at 361. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; see also *Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). Upon considering the opinion evidence of record, the ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ

may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer,* 186 F.3d at 429.

Here, we find that substantial evidence supports the ALJ's consideration of the opinion evidence of record. In crafting the RFC, the ALJ considered the opinions of Drs. Nieves, Queipo, Soto, and Z. Nieves. With regard to Gonzalez's physical impairments, Drs. Nieves and Queipo both opined for the initial and reconsideration determinations that Gonzalez could perform work at the light exertional level involving frequent postural maneuvers and no concentrated exposure to extreme temperatures, wetness, humidity, and pulmonary irritants. (Tr. 1140-42; 1157-59). The ALJ, however, accorded the opinions of Drs. Nieves and Queipo "partial" weight. (Tr. 50). The ALJ reasoned that while their opinions reflected appropriate areas of limitation, their opinions did not reflect the full extent of Gonzalez's limitations. (*Id.*). Thus, the ALJ accorded the opinions of Drs. Nieves and Queipo "partial" weight.

As for her mental health impairments, the ALJ considered the opinions of Drs. Soto and Z. Nieves and accorded their opinions "little" weight. (Tr. 50-51). Both Drs. Soto and Z. Nieves opined for the initial

and reconsideration determinations that Gonzalez had no severe mental impairments, with no more than mild limitations in any of the "paragraph B" functional areas. (Tr. 1139-40, 1155-56). The ALJ accorded Drs. Soto and Z. Nieves opinions "little" weight. The ALJ reasoned that the opinions of Drs. Soto and Z. Nieves were not consistent with the evidence of record, which was sufficient in establishing more than minimal difficulties related to Gonzalez's mental health impairments. (Tr. 50-51). Thus, the ALJ accorded the opinions of Drs. Soto and Z. Nieves "little" weight.

Gonzalez argues that the medical record lacks a proper medical opinion from a medical examiner, consultative examiner, and treating source. She concludes that the RFC is not supported by substantial evidence because the ALJ had no proper medical opinion upon which to rely. We disagree. As correctly asserted by the Commissioner, "[s]tate agency physicians and psychologists are considered to be 'highly qualified physicians and psychologists who are also experts in Social Security disability evaluations.'" *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 96 (3d Cir. 2007). Further, as mentioned above, the ALJ—not treating or examining physicians or State agency consultants—bears the exclusive

duty in making the ultimate disability and RFC determinations. *Chandler,* 667 F.3d at 361. In fulfilling this responsibility, there is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006).

Therefore, because the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence, we find that the ALJ did not err in weighing the opinion evidence of record.

### D. *The ALJ Did Not Err in His Consideration of Plaintiff's Use of a Cane in Crafting the RFC*

Gonzalez's final contention challenges the ALJ's consideration of her use of a cane in formulating the RFC. (Doc. 11, at 23-24). Specifically, Gonzalez argues that the ALJ made a finding in his decision that she used a cane for her upper dominant extremity to walk and stand. (Doc. 11, at 23). However, the ALJ offered no mention of her use of a cane to walk and stand in the RFC. (*Id*.). Gonzalez contends that the ALJ confined her to an RFC of sedentary work, which means she must engage in walking and standing up to a combined one-third of the workday. (*Id*.). Thus, Gonzalez contends that to perform work at the sedentary exertional level, she would need a cane to walk or stand due to issues

with both her lower and upper extremies, which would render her incapable of gainful employment. (Doc. 11, at 24).

As mentioned above, in assessing a claimant's RFC, the ALJ must consider all the evidence of the record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also* *Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). However, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9, 1996 WL 374185 at *7.

In this case, reviewing the record as a whole, we find that the ALJ properly considered Gonzalez's use of a cane in crafting the RFC. As correctly asserted by Gonzalez, the ALJ noted in his decision that Gonzalez uses a cane to take the pressure off her back. (*See Admin. Tr.* 49). Despite not appearing with or using an assistive device at her administrative hearing, the ALJ nevertheless considered Gonzalez's testimony that she uses a cane to effectively ambulate. (*See Admin. Tr.* 1103).

Also, while Gonzalez testified that she requires an assistive device to aid her in walking and/or standing, she fails to identify any medical documentation establishing the need for a hand-held assistive device. Therefore, because we find that Gonzalez has failed to carry her burden, we find no basis for disturbing the ALJ's determination on this matter.

An appropriate Order follows.

Dated: August 27, 2020                    **_s/Joseph F. Saporito, Jr._**
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge